Larry Eugene DOHRN, Relator,

v.

Hon. Rodolfo DELGADO, Judge of County Court at Law No. 1 of Hidalgo County, Texas, Respondent.

No. 13–96–490–CV.

Court of Appeals of Texas, Corpus Christi.

Dec. 5, 1996.

Sharyll J. Teneyuca, Law Ofc. Lawrence Garcia, San Antonio, Richard C. Smith, Richard C. Smith & Associates, Edinburg, for relator.

Rodolfo Delgado, Edinburg, for respondent.

Before FEDERICO G. HINOJOSA, Jr., YAÑEZ, and RODRIGUEZ, JJ.

## OPINION

RODRIGUEZ, Justice.

By the present mandamus proceeding, Larry Dohrn contends that the trial court abused its discretion in issuing a temporary restraining order which effectively granted temporary custody of his children to their maternal grandfather, Ernest Persyn. We grant mandamus relief.

Larry and Charlene Dohrn were divorced by decree of the Hidalgo County Court at Law No. 1, as pronounced in open court on February 21, 1996, and signed on June 25, 1996. The decree appointed both parents joint managing conservators of their four minor children, with Charlene Dohrn having primary possession of the children, including the exclusive right to establish their legal domicile and residence.

Charlene Dohrn died on August 31, 1996. On September 17, 1996, Ernest Persyn, Charlene's father, filed a Petition for Modification of Final Divorce Decree in the Hidalgo County Court, under the same cause number as the divorce, asking that he be appointed as joint managing conservator with primary possession of the children, on the ground that Larry Dohrn's possession would be injurious to the welfare of the children. Persyn effectively asked that the provisions of the prior divorce decree be now continued with

the substitution of Persyn for his deceased daughter as the joint managing conservator with primary possession of the children, while Dohrn remained the joint managing conservator with more limited rights over the children. In addition, Persyn requested temporary orders "for the safety and welfare of the children" giving him primary possession of the children, and for a temporary restraining order preventing Dohrn from interfering with Persyn's possession of the children.

Persyn attached to the petition his affidavit stating that the children had lived with their parents in San Antonio from 1988 to November 1994, when they moved with their mother to Weslaco, Hidalgo County, where they lived until September 13, 1996. The children now live in San Antonio, Bexar County, with Persyn. Persyn alleged that placing the children with Dohrn would "place the children in an environment that may endanger their physical health and significantly impair their emotion [sic] develop-

ment." In support of this allegation, Persyn stated that Larry Dohrn was indebted to Charlene Dohrn's estate for significant amounts of money that now belong to the children, that he has not paid child support since the decree of divorce, that he has attempted fraudulently to gain control of property belonging to Charlene Dohrn's estate, and that he is generally without sufficient funds or a sufficient home to care for the children.[1] In addition, Persyn filed affidavits by the two oldest children, Craig (16) and Darren (15), each stating that they would choose to live with Persyn rather than Dohrn, but offering no reasons for their choice.[2]

On the basis of Persyn's petition and supporting affidavits alone, without holding an evidentiary hearing, the trial court issued an ex parte temporary restraining order on September 17, 1996, which restrained Dohrn from interfering with Persyn's possession of the children and from taking or attempting

1. Persyn's affidavit made the following specific allegations against Dohrn:

Designation of Larry Eugene Dohrn as Joint Managing Conservator with primary possession of the children would place the children in an environment that may endanger their physical health and significantly impair their emotion development. Significant facts supporting these allegations are as follows:

Larry Eugene Dohrn is indebted to the Estate of Charlene Suzanne Dohrn, the children's mother, in an amount exceeding $80,000.00. The children are the heirs of their mother's estate. Should Larry Eugene Dohrn be allowed to manage the children's financial affairs, they would never receive those funds.

Larry Eugene Dohrn is indebted to the Estate of Charlene Suzanne Dohrn, the children's mother, in an amount exceeding $4,000.00 for arrearage in child support payments. Upon information and belief, Larry Eugene Dohrn has not paid child support since ordered to do so by this Court. Should Larry Eugene Dohrn be allowed to manage the children's financial affairs, they would never receive those funds.

Larry Eugene Dohrn has wrongfully attempted to remove property of the Estate of Charlene Suzanne Dohrn from the state of Texas, and the jurisdiction of this Court, without authority.

Larry Eugene Dohrn has made fraudulent claims against property of the Estate of Charlene Suzanne Dohrn for property specifically awarded to her by the Final Decree of Divorce entered by this Court.

Larry Eugene Dohrn, without authority, has contacted the Social Security Administration

and wrongfully attempted to obtain Social Security payments, the property of the children of deceased Charlene Suzanne Dohrn, requesting that those payments be sent to him in a location outside the state of Texas and the jurisdiction of this Court.

Upon information and belief, Larry Eugene Dohrn is without sufficient funds to provide the requisite physical care and support of the four children.

Upon information and belief, Larry Eugene Dohrn is without an adequate domicile within which to house and care for the four children, one of which is a young girl, merely 7 years of age.

Larry Eugene Dohrn has a history of imprudent management of funds, to the detriment of the health, safety and welfare of his family.

2. While it is true that Tex.Fam.Code Ann. § 153.008 (Vernon 1996), allows a child twelve years of age or older, subject to court approval, to choose their managing conservator, the statute presupposes a choice among persons who would otherwise qualify to be appointed managing conservator. We do not read section 153.008 to provide an independent basis to appoint a managing conservator who would not otherwise qualify as such, merely because the child chooses him. Accordingly, a nonparent seeking appointment as managing conservator must still prove the elements listed in section 153.131 in order to prevail over the child's surviving parent in a custody dispute. See Lewelling v. Lewelling, 796 S.W.2d 164, 167 (Tex.1990).

to take possession of the children. On September 23, 1996, Dohrn filed a sworn Plea in Abatement Subject to Motion to Transfer, contesting Persyn's standing to request modification of the prior order and possession of the children, and contending that, because the children and all of the parties reside in Bexar County, Texas, the present proceedings should be transferred to Bexar County, or alternately abated and dismissed in Hidalgo County. When the trial court failed to abate, dismiss, or transfer in accordance with his motion, Dohrn then filed the present original proceeding with this Court, and we granted leave to file his petition for writ of mandamus challenging the trial court's assumption of jurisdiction, as well as its issuance of the TRO. The trial court has now extended its TRO but refuses to hold an evidentiary hearing or to proceed further on the underlying petition, pending the outcome of this original proceeding.

Dohrn contends by the present mandamus action that the trial court had no jurisdiction to enter an order concerning the custody of the children in the Hidalgo County Court, because the death of the mother terminated the jurisdiction of that court and the residence of the children and all parties to this action in San Antonio conferred jurisdiction on the Bexar County courts. In addition, Dohrn complains that Persyn failed to present sufficient evidence to justify issuing the TRO taking the children away from their natural parent and granting temporary custody to the grandparent.

■■■ Mandamus will issue only to correct a clear abuse of discretion or violation of a duty imposed by law when that abuse cannot be remedied by appeal. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992). Mandamus is an appropriate remedy for a parent to attack the issuance of temporary orders in a custody proceeding, since such orders are not subject to interlocutory appeal. *See Dancy v. Daggett,* 815 S.W.2d 548 (Tex.1991).

Dohrn initially argues in his petition for writ of mandamus that the Hidalgo County Court lacks jurisdiction over the present custody dispute because the death of the mother terminated the effect of the prior orders and

any action concerning the custody of the children should now be brought where they presently reside, in Bexar County. We disagree.

The Texas Family Code provides for venue in an original suit affecting the parent-child relationship "in the county where the child resides, *unless:* (1) another court has continuing exclusive jurisdiction under Chapter 155; or (2) venue is fixed in a suit for dissolution of a marriage under Chapter 3." Tex. Fam.Code Ann. § 103.001(a) (Vernon 1996) (emphasis added). Accordingly, venue in the present action depends upon whether the Hidalgo County Court retained continuing jurisdiction over the children after the death of their mother.

■■■ Because a cause of action for divorce is purely personal, the death of one of the spouses abates a pending divorce action and its incidental inquiries of property rights and child custody, and the proper procedural disposition of a divorce action when one of the parties dies is dismissal. *See Whatley v. Bacon,* 649 S.W.2d 297, 299 (Tex.1983); *Turner v. Ward,* 910 S.W.2d 500, 503 (Tex. App.—El Paso 1994, no writ); *McKenzie v. McKenzie,* 667 S.W.2d 568, 570–72 (Tex. App.—Dallas 1984, no writ). After the divorce decree has been rendered, however, the death of one of the parties does not automatically require abatement and dismissal of an appeal or further actions by the divorce court. *See Dunn v. Dunn,* 439 S.W.2d 830, 833–34 (Tex.1969); *Turner,* 910 S.W.2d at 503; *Novotny v. Novotny,* 665 S.W.2d 171, 173–74 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd). Nevertheless, death of one of the spouses does have an effect on the continuing validity of the decree.

■■■ Upon the death of the managing conservator, the divorce decree no longer constitutes a valid order governing possession, and the surviving parent then becomes entitled to physical possession of the children. *Greene v. Schuble,* 654 S.W.2d 436 (Tex.1983); *Lewis v. McCoy,* 747 S.W.2d 48, 49–50 (Tex.App.— El Paso 1988, orig. proceeding); *see also* Tex.Fam.Code Ann. § 151.003 (Vernon 1996) (rights and duties of parent).

■ However, although the death of the managing conservator terminates that portion of the former decree governing conservatorship and possession, it does not terminate the continuing jurisdiction of the court that rendered that decree over the children, who are still subject to further orders and supervision by the court as long as they are minors. *See Greene; Lewis,* 747 S.W.2d at 50; Tex.Fam.Code Ann. § 155.001 *et seq.* (Vernon 1996).

Because the death of the mother in the present case terminated prior custody provisions in the divorce decree, Persyn's petition is in the nature of an original suit by Persyn for joint managing conservatorship, rather than a modification of the prior order.

■ The Family Code specifically requires the petition in an original suit affecting the parent-child relationship to contain, among other things, "a statement describing what action the court is requested to take concerning the child and the statutory grounds on which the request is made." Tex.Fam.Code Ann. § 102.008(b)(10) (Vernon 1996). However, we indulge a liberal construction of pleadings and pre-trial procedures in suits affecting the parent-child relationship, and technical rules of pleading and practice need not be strictly followed. *In re Pringle,* 862 S.W.2d 722, 724 (Tex.App.—Tyler 1993, no writ); *Brown v. Brown,* 521 S.W.2d 730, 732 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ); *Ex parte Gallop,* 486 S.W.2d 836, 839 (Tex.Civ.App.—Beaumont 1972, writ ref'd n.r.e.); *see also State Bar of Texas v. Heard,* 603 S.W.2d 829, 833 (Tex.1980); *McCurry v. Aetna Casualty and Surety Co.,* 742 S.W.2d 863, 866 (Tex.App.—Corpus Christi 1987, writ denied) (pleadings and motions are judged by their substance rather than their titles). The petition need not specifically name the section of the Family Code on which the petitioner relies, as long as it makes the necessary allegations to support the relief afforded by that section. *See Watts v. Watts,* 573 S.W.2d 864, 867 (Tex.Civ.App.—Fort Worth 1978, no writ).

■ In the present case, although Persyn titled his action as one for "modification" and specified as authority chapter 156 of the Family Code concerning modification of prior orders, his allegations of "significant impairment" to the children were equally applicable to an original suit for managing conservatorship and should be liberally construed as such. Accordingly, Persyn's petition for custody should be liberally construed as an original action in view of the nullification of the original custody provisions on the death of the mother.

■ Therefore, though the custody provisions of the prior divorce decree are now invalid, the Hidalgo County court that rendered that decree still retains continuing jurisdiction over the children with regard to the present original suit for managing conservatorship. *See Greene; Lewis,* 747 S.W.2d at 50. We conclude that Persyn correctly filed his petition in the Hidalgo County Court.[3]

■ We now address Dohrn's remaining claim that Persyn has deprived him of the custody of his children without the required showing of a significant impairment of the children's physical health or emotional development. We acknowledge that a grandparent may legitimately sue for managing conservatorship when the children in question are not being properly cared for by their parent or parents. However, the trial court abused its discretion in the present case by issuing a TRO on the basis of Persyn's affidavit alone.

The Texas Family Code generally provides standing to file an original suit affecting the parent-child relationship to a list of persons, including a parent, guardian, government agency, and others, not including a grandparent. *See* Tex.Fam.Code Ann. § 102.003 (Vernon 1996). However, another provision specifically gives grandparents standing to file an original suit requesting managing conservatorship if there is satisfactory proof ei-

---

3. Whether the present suit for conservatorship should be transferred to Bexar County is another question which Dohrn does not address by his petition for writ of mandamus. We note that transfer to the county of the children's present residence for convenience of the parties and witnesses is discretionary when the children have resided in that county for less than six months. Tex.Fam.Code Ann. § 155.202 (Vernon 1996).

ther that the child's environment presents a serious question concerning the child's physical health or welfare, or that the parents or parent consent. *See* Tex.Fam.Code Ann. § 102.004 (Vernon 1996).

In addition, once the grandparent has met the standing requirement, there is still an underlying statutory presumption that a parent should be appointed managing conservator of his or her own child, such that "[u]nless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child." Tex. Fam.Code Ann. § 153.131 (Vernon 1996).

However, the present action is only in the beginning stages at which a TRO has been entered effectively depriving Dohrn of custody of his children and placing them in Persyn's custody, pending a hearing on the underlying petition for joint managing conservatorship. The Texas Family Code allows for temporary orders in a suit affecting the parent-child relationship for, among other things, the temporary conservatorship of the child. Tex.Fam.Code Ann. § 105.001(a)(1)(Vernon 1996). Moreover, although sections 105.001(b) & (c) generally eliminate the need for sworn pleadings for a temporary restraining order, they specifically require that a TRO which excludes a parent from possession of or access to a child be based on a verified pleading or affidavit stating specific facts showing that immediate and irreparable injury, loss, or damage will result before notice can be served and a hearing held. *See also* Tex. R.Civ.P. 680.[4]

In the present case, we need not determine whether the allegations in Persyn's petition are sufficient for him ultimately to prevail in his suit for managing conservatorship of the children. *See Lewelling v. Lewelling,* 796 S.W.2d 164, 167 (Tex.1990); Tex.Fam.Code

Ann. § 153.131 (Vernon 1996). We determine only that the vague allegations of Dohrn's financial instability and dishonesty regarding property and financial obligations fail to show any immediate and irreparable injury, loss, or damage sufficient to justify the trial court's ex parte TRO depriving Dohrn of the possession of his children. Significantly absent from the present petition and affidavit are any allegations of specific and tangible injury or harm to which the children would be subjected if left in Dohrn's custody pending an evidentiary hearing on Persyn's action in the trial court. Accordingly, we hold that the trial court abused its discretion in issuing the present TRO.

We conditionally grant a writ of mandamus ordering the trial court to dissolve its TRO pending evidentiary hearing on the petition. The writ will not issue, however, unless the trial court fails to comply with the opinion of this Court.

---

4. We note that in a similar circumstance when a parent's right to possession of their child is put in dispute by a habeas corpus action by which the parent seeks the return of custody from a nonparent, return to the parent will generally be compelled absent a "serious immediate question concerning the welfare of the child." Tex.Fam. Code Ann. §§ 157.374 & 157.376 (Vernon 1996); *Cowan v. Lindsey,* 683 S.W.2d 55, 57–58 (Tex. App.—Tyler 1984, orig. proceeding).